ALABAMA DRY DOCK AND
SHIPBUILDING COMPANY,
Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, U.S.
DEPARTMENT OF LABOR, and Margaret Andrews, Administratrix of the
Estate of Mack Pritchett, Deceased, Respondents.

No. 85–7707.

United States Court of Appeals,
Eleventh Circuit.

Dec. 3, 1986.

W. Boyd Reeves, Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Grover E. Asmus, II, Mobile, Ala., for petitioner.

Marianne Smith, Associate Solicitor's Office, U.S. Dept. of Labor, Washington, D.C., for respondents.

Mitchell Lattof, Jr., Mobile, Ala., for Margaret Andrews.

Before HILL and HATCHETT, Circuit Judges, THOMAS *, Senior District Judge.

* Hon. Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

HATCHETT, Circuit Judge:

In this case, we affirm the decision of the Benefits Review Board, Department of Labor, awarding disability benefits and death benefits under the Longshoremen's and Harbor Workers' Compensation Act.

## Procedural History

The dispute in this case resulted after Mack Pritchett filed a claim for permanent total disability benefits from employment related asbestosis against his employer, Dry Dock and Shipbuilding Co. (Dry Dock), under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (the Act). On February 9, 1983, an Administrative Law Judge (ALJ) held a hearing of Pritchett's claim. Pritchett died from mesothyleoma on July 14, 1983—after the hearing, but before the issuance of the ALJ's decision.[1] On November 8, 1983, upon learning of Pritchett's death, the ALJ issued an order finding that Pritchett was entitled to permanent total disability benefits from April 1, 1981, the date on which he was forced to retire, to July 14, 1983, the date of his death. The ALJ further ruled that section 8(f) of the Act was applicable to limit Dry Dock's compensation liability because of Pritchett's heart and lung problems.[2] Pursuant to what is now section 8(d)(3), the ALJ ordered Dry Dock to pay the limited liability of 104 weeks of benefits into the Special Fund "in view of the fact that this award of disability is being effected after the death of the employee," and because the employee left no dependent survivors within the meaning of the Act.[3] On December 15, 1983, on Dry Dock's motion for reconsideration, the ALJ determined that pursuant to section 44(c)(1), Dry Dock was required to pay only $5,000 to the Special Fund because no one was entitled to death benefits under the Act.[4] The reasoning employed to reach this conclusion was that upon Pritchett's death, the disability benefits claim converted to a death benefits claim.

The administratrix of Pritchett's estate appealed the ALJ's decision to the Benefits Review Board (the Board), contending that the ALJ erred in failing to award permanent total disability benefits due from the date of disability until Pritchett's death to the estate. The Board ruled that Pritchett's estate was entitled to unpaid permanent total disability benefits that had accrued during Pritchett's lifetime. The Board also ruled that pursuant to section 8(f), Dry Dock was liable to the estate for 104 weeks of compensation and the Special Fund was liable to the estate for the remaining fifteen weeks of compensation. It also ruled that Dry Dock remained liable under the ALJ's Decision on Reconsideration for the $5,000 award to the fund.

## Discussion

At the outset, the parties argue that the Act does not squarely address the issue presented by these facts. The statute does not explicitly discuss whether payments for unpaid total permanent disability, which accrue prior to the death of an employee who dies without statutory survivors abate, are to be paid to the recipient's estate, or should be paid to the Special Fund.

---

1. Mesothyleoma is a form of cancer caused by asbestos exposure.

2. Section 8(f) outlines the limitations of an employer's liability in situations in which the injured employee has a prior existing disability. The parties do not contest the assertion that section 8(f) is applicable to limit liability, if any, due to Pritchett.

3. Section 8(d)(3) provides:
   (3) An award for disability may be made after the death of the injured employee. Except where compensation is payable under section (c)(21) of this section, if there be no survivors as prescribed in this section, then the compensation payable under this subsection shall be paid to the special fund established under section 944(a) of this title.

4. Section 44(c)(1) provides:
   Payments into such fund shall be made as follows:
   (1) Whenever the Secretary determines that there is no person entitled under this chapter to compensation for the death of an employee which would otherwise be compensable under this chapter, the appropriate employer shall pay $5,000 as compensation for the death of such an employee.

Our analysis begins with what is now codified as section 8(d)(3), which provides:

An award for disability may be made after the death of the injured employee. Except where compensation is payable under subsection (c)(21) of this section, if there be no survivors as prescribed in this section, then the compensation payable under this subsection shall be paid to the Special Fund established under section 944(a) of this title.

Because this subsection is conditioned by section 8(d)(1) which begins: "If an employee who is receiving compensation for *permanent partial disability* pursuant to sections (c)(1)–(20) of this section dies from causes other than the injury ..." (emphasis added), we find this section does not address the situation before us because in this case permanent *total* disability benefits are at issue. This section lacks significant persuasive authority for two reasons: (1) Not only does it apply to a different type of disability, but (2) it also applies to a different compensation plan. Permanent partial disability recipients receive "scheduled" benefits with length and amount of payments dependent upon the severity of the injury. Permanent total disability recipients, however, are entitled to "unscheduled" benefits throughout the course of their infirmity.

Dry Dock contends that a claim for permanent total disability benefits is abated and extinguished when the employee dies prior to the adjudication of the claim. Therefore, as the ALJ determined upon reconsideration, an employer's liability is limited to a one time $5,000 payment to the Special Fund as provided in section 44(c)(1). Dry Dock further contends that the Act, read as a whole, establishes that Congress attempted to define survivors who are to receive benefits in the case of death of an employee in accord with the express goal of the Act of providing compensation to persons dependent upon the deceased; this concern is shown by the fact that the Act does not provide for payments to a deceased employee's estate. Dry Dock further argues that where an employee entitled to permanent *partial* disability benefits (scheduled) dies prior to benefits being fully paid, Congress established under section 8(d)(3) that where no statutory survivors remain, future benefits are to be paid to the Special Fund. Dry Dock's analysis emphasizes that Congress also meant to exclude section 8(a) unscheduled permanent *total* disability cases from payment to the estate. It then reasons that because section 44(c)(1) provides that in certain situations death benefits accrue to the Special Fund, that in the situation of unpaid unscheduled permanent total disability benefits, section 44(c)(1) provides for the sole liability of the employer. Dry Dock further argues that no benefits were due before Pritchett's death because his claim for benefits was unadjudicated, thus abating upon his death.

We decline to accept Dry Dock's reading of the statute. Initially, we note such a reading would result in the employer gaining a windfall due simply to the fact that the employee died prior to adjudication of the claim. Had adjudication occurred prior to Pritchett's death, he would have been immediately entitled to payments from the time of his disability until the time of the decision.[5] Under Dry Dock's interpretation of the Act, an employer might be inclined to delay payment for as long as possible, harboring the expectation that an employee's death would limit its liability. Congress could not have intended such a result.

■ Furthermore, it is clear that the Act provides for two separate and distinct types of compensation. Section 908 is titled "Compensation for disability" and section 909 is titled "Compensation for death." Statutes and case law indicate that disability payments and death payments are two

---

5. Section 914(b) provides, in pertinent part:

The first installment of compensation shall become due on the fourteenth day after the employer has been notified pursuant to section 912 of this title, or the employer has knowledge of the injury or death, *on which date all compensation then due shall be paid.* [Emphasis added.]

separate forms of compensation and are not mutually exclusive. *See, e.g., State Ins. Fund v. Pesce,* 548 F.2d 1112 (2d Cir. 1977).

Permanent partial disability is the only disability subject to "scheduled" renumeration. The other three types of disability (permanent total, temporary partial, and temporary total) are all unscheduled—the recipients are entitled to benefits throughout the continuance of the disability. Section 8(d)(3) excludes § (c)(21) permanent partial disability from its coverage, which is the only instance in which a permanent partial disability recipient is entitled to unscheduled benefits. This shows that Congress intended only scheduled benefit payments to continue after the death of the recipient. Because unscheduled payments continue throughout the duration of the disability, these payments abate at death. Section 919(f) provides that an award for disability may be made after the death of an injured employee. This section therefore provides that accrued yet unpaid scheduled and unscheduled benefits may be awarded after the employee's death. Otherwise, an employer would receive a windfall due to the death of the employee.[6]

■ The purpose of the Act is to provide support to the injured employee, and in the case of his death, to his statutorily designated dependents. Finding that benefits are due to the employee's estate in this situation does not further that purpose. We find persuasive, however, the fact that the benefits due to Pritchett at the time of his death were accrued benefits, that is, Pritchett had established the right to receive those payments. Section 908(a) provides that permanent total disability benefits be paid in an amount calculated as a percentage of the employee's average weekly wages prior to disability. Thus, a finding of permanent total disability entitles an employee to a stream of payments, each becoming due with the passage of

time. An employee's death obviously terminates the stream of permanent total disability payments, but does not affect payments due on dates prior to death.

■ At the time of Pritchett's death on July 14, 1983, he had been totally and permanently disabled for a period of almost 119 weeks. Thus, he was entitled to 119 weeks of payments. Once an employee establishes the right to payment, the Act does not attempt to direct what he may or may not do with the money. Because the right to the payments accrued to Pritchett before his death, these payments must go to his estate. We agree with the reasoning of the Court of Appeals for the District of Columbia that "the employee does acquire a vested right in unpaid benefit instalments which have become due and payable before his death. They pass to his estate if he dies without dependents." *Turner v. Christian Heurich Brewing Co.,* 169 F.2d 681, 682 (D.C.Cir.1948).

■ Dry Dock alternatively contends that should this court find it liable to the employee's estate for disability benefits, it was improper for the Board to find that it is also liable to the Special Fund for death benefits pursuant to section 44(c)(1). Dry Dock argues that the language of section 8(f) provides a cap on its liability of 104 weeks. The Board upheld the awarding of death benefits to the Special Fund, based upon a finding that Dry Dock did not contest the section 44(c)(1) award before it. We agree. When the estate appealed the ALJ's award to the Board, Dry Dock failed to file a protective cross-appeal to argue that if the disability award should be reinstated, the death award should be vacated.

Title 20 C.F.R. 802.205 establishes the procedure for filing of cross-appeals or protective appeals before the Benefits Review Board. Section 802.205(c) provides that failure to file the proper appeal within the specified time period "shall foreclose all rights to review by the Board with respect

---

6. This result would be avoided were the posthumously awarded unscheduled benefits of an employee to be paid to the Special Fund. Indeed, Section 8(d)(3) may be read to accept such

a result with respect to permanent partial disability benefits. No party to the lawsuit, including the Department of Labor, however, suggests this result.

to the case or matter in question." Because the issue was not urged by Dry Dock before the Board or reached by the Board, it is not properly before this court. It is well established that an issue not raised before an administrative agency may not be heard for the first time on appeal. *Duncanson-Harrelson Co. v. Director, OWCP*, 644 F.2d 827, 832 (9th Cir.1981).

The Benefits Review Board's order is affirmed.

AFFIRMED.